WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lorrie Muriel,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>SCI Arizona Funeral Services, Inc., an Arizona Corporation *dba* Parker Funeral Home; John and Jane Does 1-10; Doe Corporations 1-10,<br>　　　　　　　　Defendant. | No. CV-14-08160-PCT-DLR<br><br>**ORDER** |

　　　　Before the Court are Defendant SCI Arizona Funeral Services, Inc.'s ("SCI") motion for summary judgment, (Doc. 36.), and Plaintiff Lorrie Muriel's motion to strike, (Doc. 44). The parties have also filed a stipulation to extend deadlines and continue the trial. (Doc. 47.) For the reasons stated below, Defendant's motion is **GRANTED**, Plaintiff's motion is **DENIED**, and the stipulation is **DENIED**.

**I. Background**

　　　　Plaintiff Lorrie Muriel "has worked in the funeral home industry since 1996." (Doc. 38 at 2.)[1] She has a degree in mortuary science and has been a licensed funeral director since 1999. (*Id.* at 3.) In May 2010, she began working for SCI as an embalmer earning $19 per hour. (Doc. 37-2 at 40.) In August 2010, Plaintiff began working as

---

[1] Citations to pages in the Court's docket are to the page numbers stamped at the top of the page by the Court's CM/ECF system, not the page numbers at the bottom of each page.

Location Manager earning an annual salary of $52,000. (*Id.* at 47-48.) She received two raises as Location Manager, and as of August 2013, her annual salary was $54,363. (*Id.* at 192.) In August 2013, Plaintiff requested a demotion to Funeral Director, a position earning $21 per hour. (Doc. 37, ¶¶ 13, 17; Doc. 39, ¶ 17.) She resigned in May 2014. (Doc. 37, ¶ 29; Doc. 39, ¶ 29.)

On August 28, 2014, Plaintiff filed suit against SCI. (Doc. 1.) On March 23, 2015, Plaintiff filed a second amended complaint alleging two counts: (1) violation of the Equal Pay Act ("EPA"), and (2) retaliation. (Doc. 27.) In May 2015, the parties stipulated to dismissal of the retaliation claim. (Doc. 33.) Plaintiff claims SCI violated the EPA because it paid higher wages to two male employees that performed the same work as Plaintiff. (Doc. 27, ¶ 16; Doc. 38 at 2.)

**II. Legal Standard**

Summary judgment is appropriate when, viewing the facts in a light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the non-movant to establish the existence of a material fact. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III. Analysis

The EPA prohibits employers from paying employees of one sex less than employees of the other sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions[.]" 29 U.S.C. § 206(d)(1). It "creates a type of strict liability; no intent to discriminate need be shown." *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir. 1986) (internal quotation marks omitted). In an EPA case, "the plaintiff has the burden of establishing a prima facie case of discrimination by showing that employees of the opposite sex were paid different wages for equal work." *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1073-74 (9th Cir. 1999). "The prima facie case is limited to a comparison of the jobs in question, and does not involve a comparison of the individuals who hold the jobs." *Id.* at 1074. To demonstrate a prima facie case, the plaintiff must show that "the jobs being compared are 'substantially equal.'" *Id.* at 1074 (quoting 20 C.F.R. § 1620.13(a)).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to show the difference in pay "is justified under one of the Act's four exceptions," *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974), which include situations where "such payment is made pursuant to (i) a seniority system; (ii) a merit system; (ii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex," 29 U.S.C. § 206(d)(1). The plaintiff may "rebut the employer's affirmative defenses with evidence that the employer intended to discriminate, and that the affirmative defense claimed is merely a pretext for discrimination." *Maxwell*, 803 F.2d at 446. "The appropriate inquiry to determine if the factor put forward is a pretext, is whether the employer has 'use[d] the factor reasonably in light of the employer's stated purpose as well as its other practices.'" *Id.* (quoting *Kouba v. Allstate Ins. Co.*, 691 F.2d 873, 876-77 (9th Cir. 1982)).

### A. Prima Facie Case

It is undisputed that two SCI employees received higher wages for the same jobs previously held by Plaintiff. The first, Daniel Beavers, assumed the role of Location Manager in 2013 after Plaintiff stepped down from that position. (Doc. 37-2 at 144.) He received a salary of $58,000, which was higher than the $54,363 Plaintiff attained. The second, Terry McCormack, assumed the role of Funeral Director that was vacated by Plaintiff in May 2014. (Doc. 37, ¶ 47; Doc. 39, ¶ 47.) Defendant offered McCormack the position at $22 per hour, which was higher than the rate of $21 Plaintiff received before she resigned. (Doc. 37, ¶ 49; Doc. 39, ¶ 49.) As such, Plaintiff has met her burden of establishing a prima facie case with respect to the positions of Location Manager and Funeral Director. *See Stanley*, 178 F.3d at 1073-74.

### B. Justification

Under the EPA, an employer can pay different salaries on the basis of "professional experience and education," *Stanley*, 13 F.3d at 1322, may use prior salary to set current salary, *see Kouba*, 691 F.2d at 878, and is permitted to use gender-neutral job evaluation systems, *see Equal Employment Opportunity Comm'n v. Maricopa County Community College Dist.*, 736 F.2d 510, 514 (9th Cir. 1984). Additionally, "[n]egotiation is a permissible factor other than gender to consider in determining wages." *Weber v. Infinity Broadcasting Corp.*, No. 02-74602, 2005 WL 3726303, at *5 (E.D. Mich. Dec. 14, 2005).

Defendant argues the discrepancies in pay are based on factors other than sex. With respect to the Location Manager position, it argues Beavers' salary was based on his prior salary and negotiations. With respect to the Funeral Director position, it claims McCormack's salary was based on prior salary, experience, and the "urgency" to fill the vacancy created by Plaintiff. Each position will be addressed in turn.

#### 1. Location Manager

In August 2013, after Plaintiff stepped down, Beavers was promoted to Location Manager. (Doc. 37, ¶ 17.) Beavers previously worked for Defendant as a Funeral

- 4 -

Arranger, making approximately $57,000 annually. (*Id.*, ¶ 22.) He was initially offered $54,000, less than Plaintiff's salary at the time. (*Id.*, ¶ 21.) However, this would have required Beavers to take a $3,000 pay cut, and thus he rejected the offer. (*Id.*, ¶¶ 22-23.) After negotiations, Beavers accepted $58,000. (*Id.*, ¶ 23.)

The undisputed evidence indicates that sex was not a factor in determining pay for this position. Defendant's initial offer to Beavers was actually less than Plaintiff was making at the time. However, it was also far less than what Beavers was making in his current position. Beavers thus rejected the offer, and the parties negotiated a salary of $58,000, just over $1,000 more than Beavers' pay at the time. Indeed, Plaintiff testified that it would have been unreasonable to expect Beavers to take a pay cut for the position. (*See* Doc. 37, ¶ 25.) She also testified that she had no reason to believe that the salary would have been different if Beavers was female. (*See id.*, ¶ 26.) Negotiations and prior salary explain the discrepancy in pay – not sex.

Plaintiff argues that prior salary is not a proper justification, but cites no authority in support. Prior salary may be taken into account "as long as there was 'an acceptable business reason' for basing wages on prior salary[.]" *Rexroat v. Arizona Dept. of Educ.*, No. CIV. 11-1028-PHX-PGR, 2013 WL 85222, at *6 (D. Ariz. Jan. 8, 2013) (quoting *Kouba*, 691 F.2d at 876-77)). Here, Defendant based the salary in part on prior salary because Beavers was the only person within the funeral home who was capable of filling the position. (Doc. 37, ¶ 19.) Plaintiff even recommended Beavers for the position. (*Id.*, ¶ 17.) Thus, Defendant had an acceptable business reason for using prior salary as a basis for determining salary.

Plaintiff argues that the ability to negotiate higher salary is not dispositive. She also argues that she had more qualifications than Beavers when she began working as Location Manager, and that she was the only qualified person to fill the position at that time. She claims her initial salary of $52,000 in 2010 is less than Beavers' initial offer of $54,000 in 2013, which is indicative of discrimination. She cites *Dreves v. Hudson Group Retail, LLC*, No. 2:11-cv-4, 2013 WL 2634429, at *1 (D. Vt. June 12, 2013) in

support. In *Dreves*, the plaintiff brought an EPA claim after she was terminated, arguing that her male successor was paid more for performing the same job. *Id.* At the time of her termination, the plaintiff was receiving $48,230 annually. *Id.* The male successor, who was hired immediately after the plaintiff left, was originally offered $50,000, but negotiated the salary to $52,500. *Id.* at *7. The employer argued the pay difference was based on cost of living adjustments, experience, and salary negotiations, but the court rejected the justifications. *Id.* at *6-9. It noted that "there is simply no basis for the proposition that a male comparator's ability to negotiate a higher salary is a legitimate business-related justification to pay a woman less." *Id.* at *8.

*Dreves* is distinguishable because its holding rested in large part on the fact that the employer had initially offered the successor more than the plaintiff's salary at termination. *Id.* at *8. From the start, the salary discrepancy was questionable. Here, Defendant initially offered Beavers less than Plaintiff's salary at the time, which undermines Plaintiff's argument that sex was a factor. Further, when adjusted for inflation, Plaintiff's initial salary of $52,000 in 2010 is roughly equivalent to a salary of over $55,000 in 2013, which is greater than Beavers' initial offer of $54,000. *See* Bureau of Labor Statistics, *CPI Inflation Calculator*, available at http://www.bls.gov/data/inflation_calculator.htm (last visited Oct. 26, 2015); *see Dreves*, 2013 WL 2634429, at *6. Thus, Beavers was not initially offered more than Plaintiff. The fact that Beavers successfully negotiated a higher salary does not indicate that Plaintiff's gender resulted in her receiving a lower salary for the same job.[2] Accordingly, because negotiations and prior salary reasonably explain the pay difference, a jury could not find that the discrepancy in salary was based on Plaintiff's gender.

### 2. Funeral Director

In May 2014, Plaintiff relinquished her position as Funeral Director and was terminated. (Doc. 37, ¶ 29.) At the time of her termination, she was making $21 per

---

[2] Plaintiff does not dispute that she never attempted to negotiate her salary for any of her positions. (Doc. 37, ¶ 7.) Nor does she argue that had she attempted to negotiate, Defendant would have refused her negotiations because she is female.

- 6 -

hour. (*Id.*, ¶ 13.) A couple of months later, Beavers hired Terry McCormack as the Funeral Director and Responsible Funeral Director. (*Id.*, ¶ 47.) He received an initial wage of $22 per hour. (*Id.*, ¶ 49.) Plaintiff received $21 per hour during her tenure as Funeral Director.

Defendant argues the pay difference is justified by (1) McCormick's prior earnings, (2) the urgency to find a replacement for Plaintiff, and (3) McCormick's experience. At his prior job, McCormick made $45,000 annually. (*Id.*, ¶ 50.) Using this figure, Beavers calculated McCormick's hourly wage as $21.63. (*Id.*) To compensate for his experience and the need to fill the position, Beavers rounded this figure up to $22 per hour. (*Id.*)

Plaintiff's testimony undermines her arguments that McCormick's higher pay was based on sex. Plaintiff claims there was no urgency to hire McCormack because Linda Darrow, another employee of Defendant, was serving as the Responsible Funeral Director in the interim. (Doc. 38 at 12.) But she testified that her resignation "put pressure on the facility to locate" a new licensed Funeral Director, which increased the need to fill the position quickly. (Doc. 37-2 at 81.) She also claims that McCormick's experience does not explain the discrepancy in pay and argues that McCormick's experience is comparable to hers. (Doc 39, ¶ 51.) But McCormick obtained his mortuary science degree a year before Plaintiff and had 21 years of experience as a funeral director. (Doc. 37-2 at 78.) In fact, Plaintiff agreed that McCormick's additional "five to six years of" experience in the field would justify "the extra dollar an hour[.]" (*Id.* at 80-81.) Consequently, Defendant has met its burden to come forth with evidence that the difference is pay is attributable to factors other than sex.

### C. Pretext

Because Defendant has come forward with evidence justifying the pay discrepancies, the burden shifts to Plaintiff to demonstrate that the reasons are a mere pretext for discrimination. *See Maxwell*, 803 F.2d at 446. Plaintiff argues that she need not provide discriminatory intent, but she misstates the law. "Although discriminatory

intent is not part of the employee's prima facie burden under the Equal Pay Act, an employee may rebut the employer's affirmative defenses with evidence that the employer intended to discriminate[.]" *Id.* at 446. Plaintiff fails to cite any evidence that Defendant intended to discriminate against her on the basis of her gender or any other evidence that undermines Defendant's justifications. Therefore, she has failed to meet her burden, and her claims fail.

**IV. Motion to Strike**

Plaintiff filed a motion to strike the exhibits attached to Defendant's reply brief. (Doc. 44.) She argues Defendant cannot raise new arguments or present new evidence in its reply. Although correct, the Court did not consider the exhibits in its analysis, and therefore the motion is denied as moot.

**IT IS ORDERED** that

1. Defendant's Motion for Summary Judgment, (Doc. 36), is **GRANTED**.
2. Plaintiff's motion to strike, (Doc. 44), is **DENIED**.
3. The parties' stipulation to continue the trial, (Doc. 47), is **DENIED**.
4. The final pretrial conference scheduled for December 1, 2015, and the trial scheduled for December 15, 2015, are **VACATED**.
5. The Clerk shall enter judgment and terminate this action.

Dated this 30th day of October, 2015.

Douglas L. Rayes
United States District Judge